**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ARLANDA ARNAY SMITH, | : | PRISONER CIVIL RIGHTS |
| Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | |
| | : | |
| SOLOMON DANIELS, | : | CIVIL ACTION NOS. |
| JACQUILINE PHILLIPS, | : | 1:07-CV-2166-RWS |
| Defendants. | : | |

## <u>ORDER</u>

This matter is before the Court on (a) Defendants' motion for summary judgment (Doc. No. 121), Plaintiff's response (Doc. No. 128), and Defendants' reply brief (Doc. No. 129); (b) Plaintiff's affidavit and notices (Doc. Nos. 130-32), Defendants' objection and motion to strike Plaintiff's affidavit (Doc. Nos. 133, 136), Plaintiff's response to the motion to strike (Doc. No. 137); (c) Plaintiff's motion for an extension of time to file affidavits and evidentiary material (Doc. No 138), Defendants' response (Doc. No. 141), and Plaintiff's reply (Doc. No. 142); (d) Plaintiff's motion to strike the affidavit of Dentist Bridget Pollock, his own deposition, and all of his medical records submitted by Defendants (Doc. No. 139), and Defendants' response (Doc. No. 140); (e) Plaintiff's motion for leave to file an amended complaint (Doc. No. 145), Defendants' response (Doc. No. 146), and

Plaintiff's reply (Doc. No. 148); and (f) Defendants' cross motion for sanctions (Doc. No. 147), Plaintiff's response (Doc. No. 149), and Defendants' reply (Doc. No. 150).

After providing a brief background, the Court shall first resolve Plaintiff's motion for leave to file an amended complaint (Doc. No. 145) and Defendants' cross-motion for sanctions (Doc. No. 147), Defendants' objection and motion to strike Plaintiff's affidavit (Doc. Nos. 133-34), Plaintiff's motion for an extension of time to file affidavits and evidentiary material (Doc. No 138), and Plaintiff's motion to strike (Doc. No. 139). The Court shall then address Defendants' motion for summary judgment. (Doc. No. 121).

I.    **Background**

The Court has summarized Plaintiff's allegations and claims from his September 4, 2007, complaint as follows.

> Plaintiff alleges that on the night of September 2[7], 2006, Defendants Solomon Daniels and Jacquiline Phillips, DeKalb County police officers, entered his home without first knocking to announce their presence. (Doc. 1, attached statement of facts in support of claims, at 1-2). Plaintiff states that he was initially unaware that Defendants were in his home. (Id. at 2). According to Plaintiff, he had woken up, used the restroom, and then went to his living room when Defendants "launched their surprise attack." (Id.). At this time, Plaintiff was allegedly not wearing his prescription glasses, and only the bathroom light was on in his home. (Id.).

2

Plaintiff states that Daniels initiated the "attack" by striking him "repeatedly about the face with metal handcuffs which immediately resulted in gashes, lacerations and bleeding." (Id.). Plaintiff also alleges that Daniels "repeated[ly] punched and struck . . . [him] with his fist on and about the head, face and neck." (Id.). Both Defendants then allegedly "tackled . . . [] Plaintiff onto his bed." (Id.).

Next, Defendants allegedly "unleashed a battery of punches, knees, and kicks upon [] Plaintiff from his head, to his face, to his neck, to his shoulder, to his back, to his abdomen, and to his buttocks." (Id.). Plaintiff states that Daniels attempted to pepper spray his eyes, but he sprayed Plaintiff's "nose and mouth." (Id.). Allegedly, "Daniels dropped the pepper spray container, which had a small beaded chain, into Plaintiff's hands." (Id.). Plaintiff states that Daniels then "shouted to Defendant Phillips that he dropped the pepper spray container, and that [] Plaintiff had it." (Id. at 2-3). "In order to recover the pepper spray container, Defendants [allegedly] launched a more intense physical assault upon [] Plaintiff's body." (Id. at 3). "After twenty minutes, Defendant Phillips arose from the attack on [] Plaintiff's bed, turned on a lamp, [and] radioed for assistance. As Defendant Phillips arose from Plaintiff's bed, the change in the balance of weight on the bed [allegedly] caused Defendant Daniels to lose his balance, and he fell off Plaintiff's bed. Defendant Daniels tore his shirt in the fall." (Id.).

After Phillips turned on the bedroom light, Plaintiff states that he recognized her as one of the officers who served him a petition for a temporary protective order in May of 2006. (Id.).[1] Plaintiff alleges that he gave Phillips the pepper spray, and she handcuffed him with his hands in the front of his body. (Id.). Daniels, however, insisted that Plaintiff be handcuffed with his hands behind his back. (Id.). Plaintiff complained that he was having difficulty breathing as a result of the pepper spray and

---

[1] According to Plaintiff's deposition testimony, Defendants were not in uniform and Plaintiff did not know Defendants were police officers until Phillips turned on the bedroom light. (Doc. No. 126 at 36-39.)

Daniels' choke hold.  (Id. at 4).  Consequently, Daniels ceased his efforts to handcuff Plaintiff.  (Id.).

While he was being escorted out of his home, Plaintiff allegedly reached for his glasses.  (Id.).  At this point, Phillips allegedly shouted: "He's got a weapon!"  (Id.).  Phillips and Daniels then drew their guns, and Daniels allegedly "struck [] Plaintiff in the side of the head with his handgun."  (Id.).  Plaintiff states that he began bleeding and fell to the ground.  (Id.).  Phillips and Daniels then lifted Plaintiff from the ground, escorted him out of the home, and after reaching the parking lot, Daniels allegedly caused Plaintiff to fall by striking him in the back of the knees. (Id.).  Other police officers arrived at this time, and according to Plaintiff, Daniels directed them to handcuff Plaintiff with his hands behind his back.  (Id.).

After being taken to the DeKalb County Jail, Plaintiff's alleged injuries were photographed, and he was taken to Grady Memorial Hospital for treatment.  (Id. at 5).  Plaintiff states that he suffered injuries to his head, face, back, wrists, ankles and body.  (Id.).  Additionally, Plaintiff alleges that his mouth was bleeding, and he lost an unspecified number of teeth.  (Id.).  Plaintiff also complains that the actions of Phillips and Daniels caused him "to bleed continuously from his rectum." (Id.).

Plaintiff contends that he was illegally arrested because the warrant lacked probable cause and "was illegally obtained by false swearing." (Doc. 1 at ¶ IV). . . . Plaintiff also alleges that the actions of Phillips and Daniels violated the Fourteenth Amendment and Georgia law by depriving him of his right "to be free from unlawful attack upon the physical integrity of his person with behavior so egregious and outrageous as to shock the conscience" when they "inflicted bloodshed and bodily injury" upon Plaintiff.  (Doc. 1 at ¶ IV).  Relatedly, Plaintiff claims that Defendants violated the Fourth Amendment's prohibition against "unreasonable search and seizure" by using "extreme and deadly force" to arrest him.  (Id.).

4

(Doc. No. 11 at 3-7.)  Plaintiff sought damages.  (Doc. No. 1 ¶ V.)  The Court allowed Plaintiff to proceed on his claims related to the alleged use of excessive force by Defendants Daniels and Phillips and dismissed the DeKalb County Sheriff's Office as a defendant.  (Doc. No. 11 at 8.)  The action is pending on the various motions listed earlier.

## II.   Motions Other Than for Summary Judgment

### A.   Motion to Amend and Cross-Motion for Sanctions

#### 1.   Background

As indicated above, the Court allowed Plaintiff's excessive force claims to proceed.  However, the Court dismissed Plaintiff's claim that he was illegally arrested as the result of arrest warrant number 06W19250, which he alleged was obtained by false swearing and without probable cause.  (Id.; see also Doc. No. 1 ¶ IV.)[2]  In

---

[2]   The Court previously had dismissed two actions filed by Plaintiff that complained regarding the criminal arrest warrant number 06W19250.  See 4/21/2008 Order at 10, Smith v. Mercer, No. 1:07-CV-1149-RWS (N.D. Ga. Apr. 21, 2008) (finding that Plaintiff had not alleged facts showing that the charges against him had been dropped but that "if Plaintiff 'eventually satisfies the precondition to a valid claim under Heck,' he is permitted to raise those claims in a new civil rights action"); 3/29/2007 Order at 6-7, Smith v. Mercer, No. 1:07-CV-0570-RWS (N.D. Ga. March 29, 2007) (rejecting challenge that arrest warrant was not supported by probable cause and challenge regarding lack of committal hearing, and finding that a claim of malicious prosecution requires that criminal proceedings have terminated in the defendant's favor).

AO 72A
(Rev.8/82)

October 2008, Plaintiff attempted to amend (in this case) and add claims regarding an invalid arrest warrant and the alleged denial of a preliminary hearing, but the Court explained that those claims had previously been rejected in separate civil actions and denied Plaintiff's motion to amend.  (Doc. No. 27 at 1-2.)  In May 2009, Plaintiff again attempted to amend and add claims (in addition to his excessive force claim) related to his arrest and pending state criminal case (Doc. No. 61), and the Court denied his motion to amend, warning Plaintiff that his "repeated attempts to litigate these same issues show[ed] a lack of respect for this Court's authority" and that "if Plaintiff continue[d] to raise issues which ha[d] already been resolved, this Court may have no choice but to impose sanctions, including costs and attorney's fees."  (Doc. No. 76 at 3.)  In August of 2009, Plaintiff sought reconsideration, arguing that his abuse of process claims in regard to his arrest and detention should now be considered because the criminal action against him had been terminated (i.e., had been dead-docketed in July 2009).  (Doc. No. 89, Br. at 1, 8.)  Defendants responded that "[u]nder Georgia law, an administrative dead docket is not a favorable termination of criminal proceedings."  (Doc. No. 92 at 2.)  The Court denied reconsideration and, declining to address whether the criminal prosecution against Plaintiff had been terminated in his favor, the Court found as follows:

> Requiring Plaintiff to file a new civil rights action based on the actions of Mercer and perhaps others involved in prosecuting Plaintiff's DeKalb County criminal case seems particularly appropriate here. . . . [T]his action has been pending for approximately two years. Permitting Plaintiff to amend this action in the manner he requests would almost certainly result in further delays. Thus, Plaintiff should be required to file a new civil rights action to seek damages for malicious prosecution or abuse of process.

 (Doc. No. 95 at 3.)

## 2.    **Application of Law**

In his current motion for leave to file an amended complaint, Plaintiff again seeks to raise claims that he was arrested without probable cause, and asserts that he should be allowed to amend on the grounds that the prosecution against him has been terminated in his favor – i.e., the statute of limitations has expired in his criminal case and he can no longer be tried thereon.  (Doc. No. 145.)  Defendants oppose any amendment at this late date in the proceedings and agree with the Court that, to the extent that Plaintiff's  abuse of process or malicious prosecution claims are now ripe, he should pursue those claims in a separate action.  (Doc. No. 147 at 6-7.)  Defendants request that the Court, following a hearing on the record, sanction Plaintiff for $1,050[3]

---

[3]    Defendants requested this amount based on counsel's having spent "approximately six (6) hours reviewing the pleadings and orders filed in this matter to date, researching case law, and preparing the brief in response to Plaintiff's Motion for Leave and Defendants' Cross Motion for Sanctions."  (Doc. No. 147 at 2.)

7

for the time they have spent continuing to respond to the issue of amendment.  (Doc. No. 147 at 10.)  In his motion to amend and in his response to Defendants' motion for sanctions, Plaintiff omits any reference to the Court's previous directive that he should file a separate action to pursue his claims regarding abuse of process or malicious prosecution.  (Doc. No. 145 at 1; Doc. No. 149 at 12-17.)  In his response, Plaintiff does not attempt to withdraw his motion to amend but contends that he is presenting a "new issue and fact" – that his criminal case has terminated in his favor.  (Doc. No. 149 at 16.)  Plaintiff also contends that sanctions are inappropriate because, now that his criminal case has terminated in his favor, his current motion "finally **has enough merit** to warrant consideration and to avoid sanctions."  (Id.)

For the reasons previously stated by the Court, Plaintiff's motion to amend shall be denied.  (See Doc. No. 95 at 3.)  Sanctions are governed by Fed. R. Civ. P. 11, which states,

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

AO 72A
(Rev.8/82)

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).  "[T]hree types of conduct warrant the imposition of Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose."  Pelletier v. Zweifel, 921 F.2d 1465, 1514 (11th Cir. 1991).  The Court determines "bad faith" based on "objective standards of reasonableness," not on whether the litigant, subjectively, proceeded in bad faith.  Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988).

Plaintiff's motion to amend is warranted by a non-frivolous legal argument. However, a reasonable litigant in Plaintiff's circumstances would have considered closely the Court's September 2009 decision, stating that "this action has been pending for approximately two years. Permitting Plaintiff to amend this action in the manner he requests would almost certainly result in further delays. Thus, Plaintiff should be required to file a new civil rights action to seek damages for malicious prosecution or abuse of process."  (Doc. No. 95 at 3.)  The Court finds that disregard of its decision

9

on this matter shows bad faith.  Defendants' motion for sanctions shall be granted, subject to Defendants submitting an affidavit from counsel showing the time spent in preparing only "Defendants' Response to Plaintiff's Motion for Leave to File Amended Complaint and Defendants' Cross Motion for Sanctions," filed October 13, 2010, and "Defendants' Reply Brief in Support of Defendants' Motion for Sanctions," filed November 8, 2010.

## B.   Defendants' Objection and Motion to Strike Plaintiff's Affidavit and Plaintiff's Motion to Enlarge Time

Defendants filed their motion for summary judgment on March 5, 2010 (Doc. No. 121), and the Court's "Notice to Respond" advised Plaintiff that "within 21 days from the date said motion was served upon you, you must file all materials, including any affidavits, depositions, answers to interrogatories, admissions on file, and any other relevant materials, which you wish to be considered in opposition to the motion for summary judgment" (Doc. No. 123).  Plaintiff filed his response, with attached exhibits, on March 24, 2010.  (Doc. No. 128.)  Defendants filed their reply on April 2, 2010, and the matter was ready for disposition.  (Doc. No. 129.)  Thereafter, Plaintiff filed his affidavit, attempting to add additional argument and evidence in regard to the motion for summary judgment, and filed two notices regarding the filing of additional evidentiary material.  (Doc. Nos. 130-32.)

10

Defendants have moved that Plaintiff's affidavit be stricken and have objected to Plaintiff's untimely notices of filing evidentiary material. (Doc. Nos. 133, 136.) Plaintiff has responded and moved for an enlargement of time in which to file his affidavit and evidentiary material. (Doc. Nos. 137-38.) In the brief in support of their motion to strike, Defendants argue that Plaintiff's affidavit should be stricken because it is not allowed by the Court's rules on motions for summary judgment and because Defendants would be prejudiced as the Court's rules do not allow any further pleadings by Defendants in regard to the motion for summary judgment. (Doc. No. 136, Br. at 3-4.)

Plaintiff responds that the motion to strike should be denied and he should be granted an extension of time for three reasons. (Doc. No. 137.) He asserts that his late filing should be accepted based on "excusable neglect" – i.e., he could not obtain the funds to have his affidavit notarized in a timely fashion; he had to find someone who would allow him to borrow a camera to take photographs of his former apartment complex; he had to find someone to give him money for his MARTA fare to and from his former apartment complex; and, although he began the effort to obtain his dental records on March 11, 2010, he did not receive them until April 2, 2010.[4] (Id. 2.)

_____

[4] In his reply to Defendants' response to his motion for an extension of time, Plaintiff similarly contends that he (1) diligently attempted to obtain his dental records

Plaintiff also contends that he has no obligation to present evidentiary material in opposition to the motion for summary judgment until the Defendants have met their burden of showing that they are entitled to summary judgment, which he asserts they have not done.  (Id. at 5.)  Plaintiff further argues that prejudice to Defendants is lacking because his affidavit only "contains affirmations already made in his complaint" and response to the motion for summary judgment.  (Id. at 7.)

Other than a response and reply to a motion for summary judgment, parties are not permitted to file any "supplemental briefs and materials . . . except upon order by the court."  LR 56.1A., NDGa.  Prior to filing his affidavit and notices, Plaintiff did not seek permission from the Court to file supplemental material, and his response to the motion to strike and motion for an extension of time do not convince the Court that an opportunity to supplement should be granted.  Although the Court may, based on excusable neglect, extend the time for filing a response to a motion for summary judgment, that standard does not govern whether or not a party should be allowed to file supplemental materials after the non-movant's response and movant's reply thereto have been filed.  See Fed. R. Civ. P. 6(b)(1)(B), LR 56.1A., NDGa.  Further, Plaintiff has had from September 4, 2007, to gather evidence in support of this action; Plaintiff

_____

and (2) was poor and did not have a camera.  (Doc. No. 142 at 3-5.)

12

began participating in discovery at least as early as August 2008; and his claims of excusable neglect (including his claim that he waited until March 11, 2010, to begin his allegedly diligent attempt to obtain his dental records), are less than convincing. (See Doc. Nos. 1, 23; Doc. No. 137 at 2.)  Plaintiff's second argument – that Defendants' failure to show that they are entitled to summary judgment limited his obligation to oppose their motion – fails because it misapprehends Plaintiff's duty to reply to the motion for summary judgment.  Plaintiff's third argument that Defendants will not be prejudiced fails because, to the extent Plaintiff presents anything new in support of his response to the motion for summary judgment, the Court's rules do not provide Defendants with an opportunity to respond.

For the reasons stated above, Defendants' objection (Doc. No. 133) to Plaintiff's affidavit and notices (Doc. Nos. 130-32) shall be sustained, Defendants' motion (Doc. No. 136) to strike Plaintiff's affidavit (Doc. No. 131) shall be granted, and Plaintiff's motion for an extension of time to file affidavits and evidentiary material (Doc. No 138) shall be denied.

**C.   Plaintiff's Motion to Strike**

Plaintiff moves to strike the affidavit of Dr. Pollock, his own deposition, and all of his medical records submitted by Defendants.  (Doc. No. 139.)  Plaintiff argues that Defendants unlawfully obtained his medical records without his authorization and

13

without a valid court order, in violation of Georgia law and the Health Insurance Portability and Accountability Act ("HIPAA").  (Id.)  Defendants respond that when Plaintiff put his medical status at issue by filing this action and in submitting his medical records as part of his initial disclosures, he waived any privilege associated with his medical records.  (Doc. No. 140 at 3-6.)

When a litigant alleges matters that put his medical status at issue, he waives his right to object to the admission of his medical records.  Sanchez v. McCray, 349 F. App'x 479, 483 (11th Cir. 2009) ("the district court properly overruled [the plaintiff's] objection to the admission of his medical records. . . . [The Plaintiff] put his medical status at issue, and thus his medical records were admissible as evidence"); Moreland v. Austin, 284 Ga. 730, 732, 670 S.E.2d 68, 71 (2008) ("Georgia law is clear that a plaintiff waives his right to privacy with regard to medical records that are relevant to a medical condition the plaintiff placed in issue in a civil or criminal proceeding.").

Further, Plaintiff's reliance on HIPAA is unavailing in this action. See Crawford v. City of Tampa, No. 09-15649, 2010 WL 3766627, at *1-2 (11th Cir. Sept. 28, 2010) (affirming district court's dismissal of improper-disclosure-of-medical-information claim and holding "no private right of action exists under the Health Insurance Portability and Accountability Act"); Klemonski v. Semple, No. 3:09-CV-1611, 2010 WL 2011142, at *2 (D. Conn. May 19, 2010) ("Courts . . . repeatedly have held that

14

HIPAA does not confer a private right. . . . Because HIPAA does not confer an express or implied right, plaintiff has no HIPAA rights to enforce in a section 1983 action.").

Plaintiff has put his medical status at issue, and the Court finds no reason to strike the affidavit of Dr. Pollock or Plaintiff's medical records.  Further, Plaintiff presents no argument that justifies striking his own deposition.   Accordingly, Plaintiff's motion to strike shall be denied.

## III.   **Motion for Summary Judgment**

### A.   **Statement of Undisputed Facts and Argument**

Defendants' statement of undisputed facts is as follows.

1.

On September 27, 2006, Plaintiff Arlanda Smith was in his apartment located at 3594 Meadow Glen Village Lane, Apt. C., Doraville, GA 30340.  Defendants went to Plaintiff's apartment to execute an arrest warrant for Plaintiff's violation of a temporary restraining order issued under the Family Violence Act.

2.

Once Defendants were inside Plaintiff's apartment, Plaintiff did not put his hands behind his back to be handcuffed.  Plaintiff was sprayed with oleoresin capsicum (OC) spray in the face at least once and then the pepper spray canister "fell into" Plaintiff's hands. Defendant Daniels was concerned that the situation could worsen once Plaintiff had his OC spray canister.   After twenty minutes of struggling, Phillips radioed that

"subject is still resisting." Plaintiff then allowed himself to be handcuffed with his hands in front.

### 3.

Plaintiff was taken outside his apartment for transport to the DeKalb County Jail. When Plaintiff got outside his apartment, Daniels participated in handcuffing Plaintiff with his hands behind his back.

### 4.

Plaintiff was transported to the Jail and a jail sergeant took pictures of Plaintiff's injuries upon arrival. The medical personnel at the Jail arranged for Plaintiff to be transported to Grady Hospital to be treated for his medical complaints.

### 5.

When Plaintiff arrived at Grady, he was seen by a physician. Plaintiff rated his pain level as zero (0) on a scale of zero (0) to ten (10) upon arrival. Plaintiff complained of having bright red blood in his stool. The medical provider noted that Plaintiff had abrasions on his face.

### 6.

Upon further evaluation, Plaintiff's medical records revealed that Plaintiff complained of bright red blood on his toilet paper, but not in the stool or in commode. Plaintiff only saw blood during bowel movements, and had rectal pain at that time. Plaintiff was diagnosed with "rectal bleeding likely internal hemorrhoid" and prescribed Percocet. Once Plaintiff was discharged from Grady, he never returned for any additional treatment.

(Doc. No. 121, "Defendants' Statement of Undisputed Material Facts" (citations

omitted).)

**B.**    **Summary Judgment Legal Standard**

Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant carries the initial burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that show movant is entitled to judgment as a matter of law based on undisputed facts. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). When that burden has been met, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). "[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). <u>See also</u> <u>Chanel, Inc. v. Italian Activewear of Fla., Inc.</u>, 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "non-moving party must come forward with *significant, probative evidence*") (emphasis added). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

17

C.      **Parties' Arguments**

Defendants assert that they had authority to effect Plaintiff's arrest based on the arrest warrant,[5] and that Plaintiff's actions and the fact that they did not use objectively unreasonable force combine to show that they did not violate any clearly established constitutional right. (Doc. No. 121, Br. at 7, 10-11.) Accordingly, Defendants argue that they are entitled to qualified immunity. (Id. at 6.) Defendants argue that Plaintiff's description of "a continuous vicious assault of facial punches [and] strikes to the head and body . . . over a period of twenty (20) minutes" is belied by (1) the pictures taken of him shortly after he arrived at the jail and the medical records – which show minor scrapes and abrasions, (2) Plaintiff's failure to complain of a head injury and his denial of pain when examined at the hospital, (3) the hospital diagnosis that his rectal bleeding was "likely internal hemorrhoids," and (4) Dr. Pollock's medical opinion that Plaintiff's subsequent tooth loss was caused by advanced

---

[5] The warrant for Plaintiff's arrest, for "violation of Tpo (Misdemeanor) in violation of O.C.G.A. § 16-5-95," was issued on September 12, 2006. (Doc. No. 12, Ex. C-3, Warrant No. 06W19250.) Defendants' affidavits both state that on September 27, 2006, the date in question, they were involved in executing the arrest warrant against Plaintiff. (Doc. No. 122, "Affidavit of Solomon Daniels" and "Affidavit of Jacquelyn Phillips.")

18

gingivitis.[6]   (Id. at 7, 17, 19-20.)   Defendants asserts that, absent any  evidence

corroborating that the force used was more than de minimis, Plaintiff's excessive force

claim fails.   (Id. at 17-19.)   Defendants further argue that the need for the force used

– one shot of pepper spray and other force used which caused minor scrapes and

abrasions – was supported by (1) the length of time it took Plaintiff to submit,

(2) Plaintiff's failure to relinquish the pepper spray canister for at least half of the

---

[6] The photographs taken on the day of the alleged assault show minor bruising and abrasions. (Doc. No. 126, Exs. D2-D8.) A healthcare provider at DeKalb County Jail noted that Plaintiff had "bruises on his face and bleeding from his anus" – "likely internal hemorr[h]oid" – and referred Plaintiff for an off-site evaluation. (Id. Ex. D11.) Plaintiff was seen at Grady Hospital. (Id., Ex. D12.) Grady reports show that Plaintiff reported bright red blood in his stool and a zero level of pain; reported rectal pain – mild; had bruising and abrasions; and was diagnosed with "likely internal hemorr[h]oid." (Id. Exs. D12, D13, D15.)   On return from Grady, a healthcare provider, apparently at the DeKalb County Jail, noted that Plaintiff had multiple facial bruises, denied any pain or discomfort at present, and was able to move his extremities. (Id., D16.)

Dr. Pollock averred that on October 17, 2006, Plaintiff complained that two crowns "would come off his tooth from time to time" but he could not remove the crowns upon examination, Plaintiff's dental treatment record demonstrated that he had advanced gingivitis and a lot of teeth missing, the missing teeth did not appear to be due to recent injury, and Plaintiff did not state that he had lost any teeth due to recent injury. (Doc. No. 122, "Affidavit of Bridget Pollock, DMD" ¶¶ 3-4.) Dr. Pollock further averred that (1) in November 2006, Plaintiff complained of a loose crown  and that crown was re-cemented; (2) in May 2007, Plaintiff requested that his dental bridge be "restored because of decay underneath it"; (3) and several of Plaintiff's teeth "demonstrated significant decay consistent with a lack of regular dental maintenance." (Id. ¶¶ 5-7.)

AO 72A
(Rev.8/82)

struggle (ten minutes), and (3) Plaintiff's failure voluntarily to place his hands behind his back.  (Id. at 9, 16, 20-21.)  Defendant Daniels argues that his striking one blow to Plaintiff's head – when Plaintiff was reaching for his glasses and he believed Plaintiff was attempting to arm himself – was not excessive in the circumstances.  (Id. at 22-23.)

Defendant Phillips argues that Plaintiff's excessive-force claims against her should be dismissed because Plaintiff has admitted that she did not use any force against him other than straddling his body in an attempt to keep him from eluding arrest.[7]  (Id. at 26.)  Defendants further argue that all official capacity claims fail because Plaintiff does not state a claim against their employer, Sheriff Thomas Brown. (Id. at 26-29.)

Plaintiff responds that Defendants are not entitled to qualified immunity because they were not performing a "discretionary duty."  Relying on his "excessive force" claim that is "subsumed" under his false arrest claim, Plaintiff argues that Defendants had no duty to enforce an invalid arrest warrant and no authority to use any force to execute an invalid arrest warrant.  (Doc. No. 128 at 4-12.)  Plaintiff contends that there was "no need" to use force to effect an arrest based on an invalid arrest warrant.  (Id.

---

[7] In his deposition, Plaintiff stated that Defendant Phillips never struck him in his face or body, "or anything like that," but only had handcuffed him and straddled his body to keep him from moving.  (Doc. No. 126 at 102.)

at 14-15.)  Plaintiff asserts that he lost eight teeth as a result of the beating he received – "some teeth were immediately knocked out and some were loosen [ed] and damaged." (<u>Id.</u> at 19.)  Plaintiff contends that he complained to the jail dental staff that his dental needs were related to the use of force, but the dental staff did not record his statements.  (<u>Id.</u> at 20.)

### D.   <u>Law and Disposition</u>

#### 1.   <u>Claims Against Defendants in Their Official Capacities</u>

A Georgia sheriff functions as an arm of the state in setting use-of-force policy and possesses Eleventh Amendment immunity from § 1983 use-of-force damage claims brought against him in his official capacity.  <u>Manders v. Lee</u>, 338 F.3d 1304, 1308-28; <u>see</u> <u>also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985) (stating, the Eleventh Amendment bar to damages "remains in effect when State officials are sued for damages in their official capacity").  Further, when sued in their official capacities, persons employed by the sheriff to perform his functions are entitled to the same Eleventh Amendment immunity accorded the sheriff for those functions. <u>See</u> <u>Scruggs v. Lee</u>, 256 F. App'x 229, 232 (11th Cir. 2007) (finding that employees of the sheriff, deputies sued in their official capacities, were entitled to Eleventh Amendment immunity when performing functions for which the sheriff would be accorded such

21

immunity), <u>cert. denied</u>, 552 U.S. 1280 (2008); <u>but</u> <u>see</u> <u>Jordan v. Mosley</u>, 487 F.3d 1350, 1354 n.3 (11th Cir. 2007) (noting "we have not yet decided whether the Eleventh Amendment could provide immunity to a sheriff's deputy").  Based on Eleventh Amendment immunity, Plaintiff's official capacity claims against Defendants shall be dismissed.

2.   <strong><u>Whether Defendants Engaged in a Discretionary Function</u></strong>

Defendants were engaged in a discretionary function, and Plaintiff's attempt to rely on his false arrest claim does not show otherwise.

> A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity.  To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred.  Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.

<u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir. 2004) (citations omitted). A law enforcement officer's act of effecting an arrest is a discretionary function because it falls within his official responsibilities.  <u>Id.</u>  Additionally, the violation of warrant and probable cause requirements in effecting an arrest does not transform an arrest into a non-discretionary function.  <u>See</u> <u>Bashir v. Rockdale County, Ga.</u>, 445 F.3d 1323, 1331-32 (11th Cir. 2006) (applying qualified immunity standard to unlawful

22

arrest claim and finding that officers, although involved in discretionary function, had violated clearly established law in effecting an arrest without probable cause or a warrant); Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282-83 (11th Cir. 1998) ("The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act" – "defendant had acted within his discretionary authority not because that authority included filing unfounded probable cause affidavits, but because his duties included writing and submitting probable cause affidavits").

Defendants' affidavits are sufficient to show that they were performing a discretionary function. Plaintiff's attempt to rely on his false arrest claim to show that Defendants were not performing a discretionary function fails. Effecting arrests falls within a law enforcement officers' job responsibilities, and it cannot reasonably be argued otherwise. The Court clarifies to Plaintiff that he was allowed to proceed only on his discrete excessive force claim – he was <u>not</u> allowed to proceed on his claim of an illegal or false arrest or an "excessive force" claim of the type that necessarily would be included or subsumed in a false arrest claim.[8]

---

[8] In the Eleventh Circuit, an arrestee may bring (1) a claim of an illegal arrest, in which an "excessive force" claim is subsumed based on the fact that "if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest" and/or (2) a discrete claim of excessive force, which "evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (i.e., non-de minimis force unreasonably disproportionate to the

AO 72A
(Rev.8/82)

### 3.   Whether Defendants are Entitled to Qualified Immunity on Plaintiff's Discrete Excessive Force Claim

As stated above, after "the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." Crosby, 394 F.3d at 1332 (citations omitted). To do so, "the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it." Id.  A state actor's use of excessive force against an arrestee raises Fourth Amendment concerns regarding the right to be free from unreasonable seizures.  See Graham v. Connor, 490 U.S. 386, 388 (1989). Additionally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) (analyzing Eighth Amendment excessive force claim).  The Fourth Amendment's standard of objective reasonableness applies, which demands a balancing of the nature of the intrusion on the arrestee's Fourth Amendment interests

---

need) in effecting an otherwise lawful arrest." Bashir, 445 F.3d at 1331-32 ("When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest.").

with the governmental interests in using force, and "requires  careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Id. 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).  To prevail before a jury on an excessive force claim, a plaintiff must present evidence whereby a jury could find that "the force used in making an arrest was excessive or unreasonable on the basis of that degree of force that a reasonable and prudent law enforcement officer would have applied in making the arrest under the same circumstances disclosed in this case."  Eleventh Circuit Pattern Jury Instruction, Federal Claims Instructions 2.2; Hernandez v. Mascara, 368 F. App'x 80, 81 (2010) (approving use of Federal Claims Instruction 2.2 for excessive force).

However, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."  See Nolin v. Isbell, 207 F.3d 1253, 1255, 1258 n.4 (11th Cir. 2000).  Accusations that an officer "grabbed [the plaintiff] from behind by the shoulder and wrist, threw him against a van

three or four feet away, kneed him in the back and pushed his head into the side of the van" and caused "bruising to [the plaintiff's] forehead, chest, and wrists" that disappeared quickly, "[fell] well within the ambit of the de minimis force principle." Id.  Although "the extent of physical injury is not conclusive about the presence or absence of constitutional violation, . . . a lack of serious injury can illustrate how much force was actually used." Walker v. City of Orlando, 368 F. App'x 955, 956 (11th Cir. 2010) (citing Wilkins v. Gaddy, _ U.S. _, 130 S. Ct. 1175 (2010)).  It is, however, objectively unreasonable to use pepper spray against an arrestee, who is suspected of a minor offense, who is not threatening the officer or attempting to flee, and who has communicated willingness to be arrested.  Brown v. City of Huntsville, Ala., 608 F.3d 724, 739 (11th Cir. 2010).  Further, a jury is permitted to find that the use of force was excessive and unreasonable when the force (which in other circumstances may have been reasonable) only became necessary because an officer failed to properly identify himself as a law enforcement official.  See Ortega v. Schramm, 922 F.2d 684, 694-96 (11th Cir. 1991).

That Defendants had the right to make the arrest and "use some degree of physical coercion or threat thereof to effect it," Graham, 490 U.S. at 396, is not at issue.  What is at issue is whether the force they used was excessive.  The force used after Plaintiff realized Defendants were police officers consists of (1) Plaintiff reaching

for his glasses, Phillips allegedly shouting "He's got a weapon!," and Daniels allegedly striking "Plaintiff in the side of the head with his handgun" and (2) Daniels allegedly causing Plaintiff to fall by striking him in the back of the knees when he was walking in the parking lot.  In the circumstances, it was objectively reasonable to think Plaintiff may have been reaching for a weapon and, further, with consideration to the need for force in the circumstances, the records before the Court do not show that the alleged strike to Plaintiff's head was unduly excessive, i.e., the medical records show only minor abrasions and do not show a serious wound resulting from the alleged strike to the side of Plaintiff's head.  Further striking Plaintiff in the back of his knees qualifies as de minimis force, and the medical records do not show any injury to suggest otherwise.

The same cannot be said for the initial alleged use of force, which consisted of Defendants tackling Plaintiff to his bed, Daniels striking Plaintiff "repeatedly about the face with metal handcuffs which immediately resulted in gashes, lacerations and bleeding," Daniels "repeated[ly punching and striking] . . . [him] with his fist on and about the head, face and neck," Defendants allegedly unleashing "a battery of punches, knees, and kicks upon [] Plaintiff from his head, to his face, to his neck, to his shoulder, to his back, to his abdomen, and to his buttocks," and the use of pepper spray – all of which occurred when Plaintiff alleges Defendants had not identified

27

themselves as police officers.  <u>See</u> "I. <u>Background</u>" <u>supra</u>.  The injuries alleged from

these actions are (1) rectal bleeding, (2) gashes and lacerations, and (3) loss of teeth.

Based on Plaintiffs allegations, Defendants did not identify themselves as

officers and Plaintiff did not know they were officers during the initial altercation and

use of pepper spray.  It would be objectively unreasonable for un-uniformed officers

to use pepper spray when they had not identified themselves as officers and when the

arrestee did not appear to understand they were officers.  As to Defendants' remaining

argument – that there is a lack of corroborating evidence to show that they used more

than de minimis force – the Court agrees only in part.  Plaintiff's rectal bleeding and

the diagnosis of an internal hemorrhoid, do not support his claim of excessive force.[9]

Defendants, however, do not show that they are entitled to summary judgment in

regard to the initial alleged pummeling to Plaintiff's head, which allegedly caused him

to loose several teeth.  Defendants rely on Dr. Pollock's affidavit to show that Plaintiff

had advanced gingivitis and a lot of teeth missing due, apparently, to poor dental

hygiene.  The affidavit, however, states only that the missing teeth did not "appear" to

be due to recent injury.  (Doc. No. 122, "Affidavit of Bridget Pollock" ¶ 4.)  Had

---

[9] Internal hemorrhoids generally are caused by "pregnancy, aging, chronic constipation or diarrhea, and anal intercourse," http://digestive.niddk.nih.gov/ddiseases/pubs/hemorrhoids/index.htm (last visited November 8, 2010), not an external beating.

28

Defendants presented a dentist's unequivocal opinion that Plaintiff's missing teeth were not due to a recent injury, Plaintiff would be required to oppose such an opinion with more than his mere allegation that the use of force caused him to lose teeth (some immediately and some later).  Defendants, however, have not done so.  Although Plaintiff's abrasions and contusions – as shown in the medical record – do not appear to support Plaintiff's contention that Defendants used more than de minimis force, his allegations that he lost several teeth as a result of the force indicate that the force was excessive.  Dr. Pollock's affidavit confirms that Plaintiff had a lot of teeth missing, and her equivocal statement is insufficient to show that the tooth loss was not caused by the use of force alleged by Plaintiff.  Thus,  Defendants fail to show that they are entitled to summary judgment in regard to the force used before Phillips turned on the bedroom light.   Additionally, Officer Phillips's contention that she is non-liable because she did not participate in the alleged beating fails.  See Skrtich, 280 F.3d at 1301.

Based on the above, Defendants' motion for summary judgment shall be granted as to the use of force that allegedly caused Plaintiff's rectal bleeding and as to the use of force after Plaintiff realized Defendants were police officers.  Defendants' motion, however, shall otherwise be denied in regard to the initial alleged use of force to

29

Plaintiff's head (before Phillips turned on the bedroom light and Plaintiff realized Defendants were officers) and as to the use of pepper spray.

**III.**   **Conclusion**

For the reasons given,

**IT IS ORDERED** that (1) Defendants' objection (Doc. No. 133) to Plaintiff's affidavit and notices is **SUSTAINED**, (2) Defendant's motion (Doc. No. 136) to strike Plaintiff's affidavit is **GRANTED**, and (3) Plaintiff's affidavit and notices (Doc. Nos. 130-32) are **HEREBY STRICKEN**.

**IT IS ORDERED** that Plaintiff's motion (Doc. No 138) for an extension of time to file affidavits and evidentiary material; Plaintiff's motion (Doc. No. 139) to strike the affidavit of Dentist Bridget Pollock, his own deposition, and all of his medical records submitted by Defendants; and Plaintiff's motion (Doc. No. 145) for leave to file an amended complaint are **DENIED**.

**IT IS ORDERED** that Defendants' cross motion for sanctions (Doc. No. 147) is **GRANTED**, subject to Defendants submitting an affidavit from counsel showing the time spent in preparing only "Defendants' Response to Plaintiff's Motion for Leave to File Amended Complaint and Defendants' Cross Motion for Sanctions," filed

AO 72A
(Rev.8/82)

October 13, 2010, and "Defendants' Reply Brief in Support of Defendants' Motion for Sanctions," filed November 8, 2010.

**IT IS FURTHER ORDERED** that Defendants' motion (Doc. No. 121) for summary judgment is **DENIED** in part and **GRANTED** in part as follows: Defendants' motion is **DENIED** with respect to Plaintiff's individual capacity claims against Defendants regarding their alleged initial use of force to Plaintiff's head and the use of pepper spray, which occurred before Phillips turned on the bedroom light, and Defendants' motion otherwise is **GRANTED**.

The Clerk of Court is **DIRECTED** to terminate the DeKalb County Sheriff's Office as a defendant in this action.  (See Doc. No. 11 at 8.)

**IT IS SO ORDERED,** this   24th   day of November, 2010.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

31